CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

FILED

Aug 31 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK HANF, and<br>NAM PHAN,<br><br>Defendants. | CASE NO. 3:26-cr-00434-JSC<br><br><u>VIOLATIONS</u>:<br>18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;<br>18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity;<br>18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) & 28 U.S.C. § 2461(c) – Criminal Forfeiture<br><br>SAN FRANCISCO VENUE |

# I N F O R M A T I O N

The United States Attorney charges:

## Introductory Allegations

At all times relevant to this Information:

1. The defendant, MARK HANF, resided in Tiburon, California, in the Northern District of California.

2. The defendant, NAM PHAN, resided in the Northern District of California.

3. Pacific Private Money, Inc. (PPMI) was a California corporation formed by HANF in 2010 that maintained headquarters and operations in Novato, California. Pacific Private Money Group LLC ("PPMG") is a California limited liability company formed by Hanf that is affiliated with PPMI

and that operates a series of subsidiaries which, in turn, manage investment funds (the "Funds").

4. PPMI and PPMG were among many affiliated business entities owned and controlled by HANF that acted as one enterprise, known as Pacific Private Money (PPM), to originate loans secured by real property. HANF was the Chief Executive Officer (CEO), owner, and manager of PPMI and all related entities. In 2015, PHAN began working at PPMI. In 2020, PHAN was promoted to Chief Operating Officer (COO) of PPMI, and HANF provided PHAN with a 10 percent equity stake in PPMG's holding company. HANF retained 90 percent ownership in PPMG's holding company.

5. HANF founded and used many affiliated entities to solicit investments, including: (1) Pacific Private Money Fund I, LLC (PPMF), formed in 2013; (2) Pacific Freedom Fund, LLC (PFF), formed in 2020; (3) Pacific SW Note Fund, LLC (PSWNF), formed in 2020; (4) Pacific Opportunity Fund, LLC (POF), formed in 2022, (5) and Arrival Fund I, LLC, formed in 2024 (collectively, the PPM Funds).

6. Hanf Capital LLC was a California limited liability company formed by HANF in 2019 with a principal place of business in Novato, California, and owned and controlled by HANF. Hanf Capital was not a PPMI-affiliated entity.

7. Pacific Realty Development I LLC (PRD) was a California limited liability company formed by HANF in 2020 with a principal place of business in Novato, California, and owned and controlled by HANF. PRD was not a PPMI-affiliated entity.

8. The PPM Funds and related entities obtained capital from investors to fund loans to borrowers seeking to acquire and/or develop real property. The loans were secured by real property. The PPM Funds, PPMI, and related entities earned revenue from loan origination, servicing, related fees, and sales. The PPM Funds provided investors with membership shares. PPM Fund members were paid fixed distributions either monthly or quarterly at a rate of approximately six to 10 percent annually depending on the fund, or members could elect to have the distributions accrue to the principal investment amount.

9. Beginning in or about 2013, HANF raised funds from investors for PPMF. Beginning in or about 2015, PHAN also began working with HANF to raise funds from investors. In oral representations to investors and in investment documents, HANF, PHAN, and others working at

HANF's direction told investors that (1) all loans originated by PPMF, the PPM Funds, and related entities would be secured by real property, and (2) that investors could redeem their initial investment and accrued dividends within 30 days without a penalty.

10. From in or about December 7, 2021, through in or about December 2025, HANF, PHAN, and others working at HANF's direction raised approximately $103 million from more than 175 investors via the PPM Funds.

The Scheme and Conspiracy to Defraud

11. Beginning in or about December 7, 2021, and continuing through in or about December 2025, defendant HANF, PHAN, and others known and unknown to the Grand Jury, engaged in a scheme, plan, and artifice to defraud investors as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, by making false and misleading statements, and failing to disclose material facts with a duty to disclose.

12. The objective of the scheme and conspiracy to defraud was to induce investors to invest in the PPM Funds by making false claims and omitting material facts with a duty to disclose regarding the financial condition of the PPM Funds and related entities.

13. In 2021, the largest single holder of PPMF loans, DEVELOPER-1, died. DEVELOPER-1's loans represented a significant portion of PPMF's assets, and around the time of DEVELOPER-1's death in 2021, HANF and PHAN learned that DEVELOPER-1's loans were non-performing and many of the projects securing those loans were distressed and unlikely to be able to repay the loans or provide adequate value to secure the loans. This significantly impaired PPMF's financial condition, but HANF, PHAN, and others did not disclose to existing or new investors the extent of PPMF's losses related to DEVELOPER-1's non-performing loans.

14. By no later than December 2021, HANF, PHAN, and others, were aware that PPMF was unable to cover expenses, investor distributions, and investor redemptions with loan origination, servicing, and related revenue. On or about December 7, 2021, HANF, PHAN, and others acting at their direction began transferring funds between the PPM Funds in order to cover expenses of the companies, investor distributions, and investor redemptions, and over time the volume and value of inter-entity transfers increased. HANF, PHAN, and others acting at their direction recorded these

transfers in the books of the companies as inter-entity loans that accrued interest knowing that little or no interest was actually paid on these purported inter-entity loans. In addition, HANF and PHAN caused new funds invested in one PPM Fund, such as PFF, to pay investors distributions and redemptions in other PPM Funds, such as PPMF. HANF and PHAN had a fiduciary duty to investors and an obligation to disclose material information but hid from investors the extent of the inter-entity loans and the fact that interest was not paid on the loans. Further, HANF and PHAN made materially false statements to investors about the financial condition of the PPM Funds. In fact, as HANF and PHAN knew, in order to make continued payments of distributions and redemptions to investors, the PPM Funds needed to continue to collect new investor funds, and that contrary to the representations about the use of funds being used to originate loans secured by real property, new investor funds in fact were used to pay distributions and redemptions to previous investors.

15. In furtherance of the scheme and conspiracy to defraud, the defendants HANF and PHAN used a variety of means and methods, including:

a. Making false statements in the solicitation of investors for the PPM Funds, including false statements regarding the use of investor funds, the financial condition of the PPM Funds, and the profitability of the PPM Funds;

b. Making false statements, and omitting true facts that HANF and PHAN had a duty to disclose, regarding the use of new investor funds to pay for interest and distributions owed to prior investors, in the manner of a Ponzi scheme;

c. Making false statements, and omitting true facts that HANF and PHAN had a duty to disclose, that the PPM Funds were engaged in inter-entity lending without securing inter-entity lending with real property;

d. Making false statements to at least one investor by showing him inaccurate and manipulated "loan tapes" containing false and misleading information about loans held by the PPM Funds in order to prevent that investor from withdrawing funds from the PPM Funds;

e. Making false statements and omitting true facts with a duty to disclose to a corporate investor that the PPM Funds owned certain loan assets when in fact

those loan assets had already been sold;

f. HANF transferred funds from the PPM Funds to Hanf Capital and PRD and omitted true facts about the transfers from investors in the PPM Funds;

g. HANF spent PPM Funds, after transferring them from the PPM Funds to Hanf Capital and PRD, on personnel expenses such as credit card bills and home mortgage payments and omitting true facts with a duty to disclose about these transfers and spending from investors in the PPM Funds;

h. Making false statements and omitting true facts with a duty to disclose that HANF was spending PPM Funds on speculative investments unrelated to real estate.

16. In furtherance of and for the purpose of executing such scheme or artifice to defraud, and in furtherance of the conspiracy, defendants HANF and PHAN transmitted or caused to be transmitted wire communications in interstate commerce.

<u>COUNT ONE</u>: (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

17. Paragraphs 1 through 16 are realleged and incorporated as if fully set forth herein.

18. Beginning no later than December 7, 2021, and continuing through in or about December 2025, in the Northern District of California and elsewhere, defendants,

MARK HANF,
NAM PHAN,

and others known and unknown to the Grand Jury, did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission and concealment of material facts with a duty to disclose, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO: (18 U.S.C. § 1957 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

19. Paragraphs 1 through 16 are realleged and incorporated as if fully set forth herein.

20. On or about May 5, 2025, in the Northern District of California and elsewhere, the defendant,

MARK HANF,

knowingly engaged in a monetary transaction by, through, and to, a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, by causing and directing the electronic payment of $12,162.36 from a Wells Fargo Prime Checking account ending in -1194, constituting a monthly home mortgage payment, such property having been derived from a specified unlawful activity, that is, Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, all in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION: (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c) - Criminal Forfeiture)

22. All of the allegations contained in this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

23. Upon a conviction for the offenses alleged in Counts One of this Information, the defendants,

MARK HANF,
NAM PHAN,

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) all property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the result of those violations, including, but not limited to, all real property or personal.

24. Upon a conviction for the offenses alleged in Counts Two of this Information, the defendant,

MARK HANF,

shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, all real property or personal.

25. If any of the aforementioned property, as a result of any act or omission of the defendants,

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendants have in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

All in violation of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: August 31, 2026

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Christiaan H. Highsmith*
CHRISTIAAN H. HIGHSMITH
PATRICK K. O'BRIEN
Assistant United States Attorneys